086201.0014(207)                    RMC:lab                    #397

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **OWNERS INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **KEELER CONSTRUCTION GROUP,** | ) |
| **INC., an Illinois corporation, PAULA** | ) |
| **BYRNE and MICHAEL BYRNE,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Plaintiff, Owners Insurance Company, by its attorney, Robert Marc Chemers of Pretzel & Stouffer, Chartered, and for its Complaint for Declaratory Judgment against the Defendants, Keeler Construction Group, Inc., an Illinois corporation, Paula Byrne and Michael Byrne, alleges the following:

### JURISDICTION

1.     The jurisdiction of this Court is premised upon 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in this action seeking a declaration of no insurance coverage.

### VENUE

2.     Venue is premised upon 28 U.S.C. § 1391 as the Defendants are residents of this District.

## THE PARTIES

3.      Owners Insurance Company ("Owners") is a Michigan insurance corporation, which maintains its principal place of business in Lansing, Michigan, and which at all times herein relevant was licensed to and which did transact insurance business in the State of Illinois and elsewhere.

4.      Keeler Construction Group, Inc. ("Keeler" or "the Insured") is an Illinois corporation which maintains its principal place of business in Blue Island, Illinois, and which is a named insured on policies of insurance issued by Owners.

5.      Paula Byrne and Michael Byrne, her husband ("the underlying Plaintiffs") are residents of Palos Park, Illinois and are citizens of the State of Illinois, who are the plaintiffs in a certain action brought against Keeler in another Court, which action is more fully described later herein, and who have been joined to the extent that they are interested parties. Owners seeks no relief from the underlying Plaintiffs, who have been joined solely to be bound by the judgment to be rendered in this cause. In the event that they stipulate and agree to be bound by the judgment or order herein, Owners will seek to voluntarily dismiss the underlying Plaintiffs from this action.

## THE OWNERS POLICIES

6.      Owners issued its policy of insurance numbered 194604-07213426-22 to Keeler as a named insured. The Tailored Protection Policy provided for, among other things, Commercial General Liability Insurance on a primary basis for the effective period of September 18, 2022 to September 18, 2023. A true and correct copy of the Owners policy is attached hereto, made a part hereof and is marked as Pleading Exhibit A.

2

7.      The Owners policy was renewed for the period of September 18, 2023 to September 18, 2024 under policy number 194604-07213426-23. A true and correct copy of the renewal policy is attached hereto, made a part hereof and is marked as Pleading Exhibit B.

**THE UNDERLYING LITIGATION**

8.      An action was filed against Keeler by the underlying Plaintiffs seeking damages for its alleged breach of contract and alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act in their unverified Complaint filed in the Circuit Court of Cook County, Illinois, County Department, Law Division, brought under Cause No. 25 L 1629. A true and correct copy of the Complaint against Keeler in the aforesaid action is attached hereto, made a part hereof and is marked as Pleading Exhibit C.

9.      In their Complaint, the underlying Plaintiffs allege that Keeler breached its contracts in various ways, including the following in their Paragraph 18:

18.     Defendant Keeler Construction Group, Inc., by and through its agents, servants and/or employees failed in its duties under the subject contracts in the following ways:

a.      Failing to install risers and steps properly;

b.      Failing to install landing resulting in the incorrect heights of steps;

c.      Failing to install all steps at the same height;

d.      Failing to install a newel post necessary to meet code;

e.      Failing to installed straight and evenly spaced spindles;

f.      Failing to properly patch and paint side walls;

3

g. Failing to properly paint and stain stairs in a workmanlike manner;

h. Failing to properly install crown molding, requiring new wood screws and adhesives;

i. Failing to install the support beam properly, such that it needed to be straightened, patched and painted;

j. Failing to install the second beam properly, such that it needed to be straightened, patched and painted;

k. Failing to install the heat register in guest bath upstairs properly, requiring the tile flooring to be removed and new tile installed;

l. The guest's bedroom flooring was removed to repair holes in subfloor and were patched with thin pressed board, not wood.

10. The underlying Plaintiffs allege in their Paragraph 20 that Keeler's work required repair by third parties as follows:

20. Additionally, the Byrnes have received estimates and invoices for further repairs due to structural damage inflicted by Defendants, of which is necessary to fulfill the obligations of the subject contract in excess of $75,000.00. Those repairs include but are not limited to:

a. General repairs to the vinyl flooring throughout the entire home, as it is not laid following the pattern as identified by the subject contracts.

b. Rough cuts around the door frames, heat registers and woodwork.

c. Soft areas of flooring that are insufficient to support weight of Plaintiffs;

d. Planks of flooring that are separating at vertical seams;

e. Six heat registers that have protruding, unsafe sheet metal.

4

> f.      Cold air return requires replacement in an interior wall, as Defendant improperly installed it on an exterior wall, rendering it ineffective.

## COUNT I
### (DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND AND INDEMNIFY)

11.     Owners adopts and repeats the allegations of ¶¶ 1 through 10 as and for ¶ 11 hereof as though the same were fully set forth herein.

12.     While each Owners policy, Pleading Exhibits A and B extends coverage to an insured for "bodily injury," "property damage," and "personal and advertising injury" as defined therein, the claims in the action against Keeler not covered by the Owners policies of insurance.

13.     Each Owners policy provides in its Insuring Agreement for "bodily injury" and "property damage" as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABLITY**
>
> **1.      Insuring Agreement**
>
> > **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> >
> > > **(1)**      The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

14. Each Owners policy provides in its Insuring Agreement for "personal and advertising injury" as follows:

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

6

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

15. Each Owners policy defines certain terms used in the Insuring Agreements set forth in ¶¶ 13 and 14 hereof as follows:

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement;

7

\*     \*     \*     \*     \*

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*     \*     \*     \*     \*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

\*     \*     \*     \*     \*

"Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

8

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

16. Keeler tendered its defense to Owners for the action brought by the underlying Plaintiffs, and Owners accepted that tender subject to reservation for the reasons stated herein.

17. Owners contends that it has no duty or obligation under its policies to defend and indemnify Keeler in connection with the claims made against it by the underlying Plaintiffs for one or more or all of the following reasons:

(a) That the Complaint does not allege "bodily injury" as defined by the policies of insurance.

(b) That the Complaint does not allege "property damage" as defined by the policies of insurance.

(c) That the Complaint does not allege "personal and advertising injury" as that term is defined by the policies of insurance.

(d) That the Complaint does not allege an "occurrence," that is, accidental conduct in counts seeking damages for breach of a

9

construction contract or alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

(e)     That the Complaint alleges damages for "property damage" to the Insured's work arising out of it or any part of it after completion of the work and included in the "products-completed operations hazard" which is excluded by the CGL Policies.

(f)     That the Complaint does not allege an "occurrence" or "property damage" as defined by the CGL Policies for the claims of violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

(g)     That the alleged defective construction and damages set forth in the underlying Plaintiffs' Complaint are not covered by the policies as there is no allegation of damage to property other than the work of the Insured.

(h)     That the alleged failure to fix, repair or remediate the work does not constitute "property damage" caused by an "occurrence" as those terms are defined by the policies which do not cover the recovery for economic loss and not physical injury to tangible property other than the work of the Insured.

(i)     That the breach of contract claims of the underlying Plaintiffs in their Complaint do not qualify as an "occurrence" under the policies.

(j)     That the policies are intended to protect the Insured from liability for damage to property of others and not to pay costs associated with repairing or replacing the Insured's defective work which is an economic loss and not "property damage."

(k)     That as the allegations of the underlying Plaintiffs' Complaint are beyond the coverage of the policies, and Auto-Owners has no duty or obligation to defend with respect to the allegations set forth by the underlying Plaintiffs in their Complaint.

18.     The above contentions of Owners are, on information and belief, denied by Keeler which in turn, contends that it is entitled to coverage under the Owners policies. Owners, in turn, denies the contrary contentions of Keeler and each of them.

19.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

11

## COUNT II
### (REIMBURSEMENT OF DEFENSE COSTS)

20.     Owners adopts and repeats the allegations of ¶¶ 1 through 19 as and for ¶ 20 hereof as though the same were fully set forth herein.

21.     The Owners policies provide in an endorsement that should a Court determine that the policies do not apply, and that Owners has no duty to defend, then Owners is entitled to be reimbursed by the Insured for the defense costs incurred. Specifically, the endorsement provides as follows:

> If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will apply to defense costs we have incurred after we notify you that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

22.     In its reservation of rights letter to Keeler, Owners advised that there was no coverage and if there was a declaration of no insurance coverage, that Owners would seek to be reimbursed by Keeler for all of the defense costs paid by Owners pursuant to the reservation of rights.

23.     Upon entry of a judgment that Owners has no duty to defend Keeler for the underlying action, Keeler has an obligation to reimburse Owners for the amount paid by Owners to defend it for the action brought by the underlying Plaintiffs to avoid an unjust enrichment.

12

**PRAYERS FOR RELIEF**

**WHEREFORE**, the Plaintiff, Owners Insurance Company, prays that this Court enters judgment finding and declaring the rights of the parties as follows:

**AS TO COUNT I:**

A.      That Owners Insurance Company has no duty or obligation to provide a defense and indemnity to Keeler Construction Group, Inc. for the action filed in the Circuit Court of Cook County, Illinois by Paula Byrne and Michael Byrne under Cause No. 25 L 1629 under its policies of insurance.

B.      That the Court grant Owners Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.      That Owners Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

**AS TO COUNT II:**

A       That Owners Insurance Company is entitled to a judgment against Keeler Construction Group, Inc. for the amount of defense costs and expenses incurred by Owners Insurance Company on its behalf in connection with the action filed by Paula Byrne and Michael Byrne in the Circuit Court of Cook County, Illinois under Cause No. 25 L 1629.

B.      That the Court grant Owners Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

13

C.      That Owners Insurance Company be awarded and have and recover their just and reasonable costs incurred herein and have execution issue therefor.

Respectfully submitted:

*/s/   Robert Marc Chemers*
Robert Marc Chemers (Bar No. 0431508)
PRETZEL & STOUFFER, CHARTERED
200 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone:       (312) 578-7548
Fax:                    (312) 346-8242
E-Mail:  rchemers@pretzel-stouffer.com

14